## CITY OF PORTLAND *v.* BESSER, ET AL.

OFFICIAL BOND.—Delivery and acceptance of an official bond may be inferred from circumstances, where no particular mode is prescribed by statute. The possession of such a bond by the corporation in whose favor it is drawn, accompanied by possession of the office, the exercise of its powers, and the receipt of the salary attached to it from the corporation, by the officer making such bond, are circumstances from which its delivery and acceptance may be inferred.

COPIES—SEVERAL MAY BE CERTIFIED TOGETHER.—Several different copies may be certified together by the legal custodian of the original records, under sections 734 and 738 of the civil code, by one certificate, properly annexed, and referring to all such copies, so as to entitle them to admission as evidence. It is not necessary that a distinct certificate should be attached to each copy.

PRESUMPTION.—Where county orders, drawn in favor of a particular person, have been issued by the county clerk, and are afterwards found in the possession of the county treasurer, endorsed with the name of such person, and canceled as required by law upon their redemption by such treasurer, a presumption arises that they were received and endorsed by such party, in the usual course of business; and that payment thereof has been made to the party entitled thereto.

IDEM.—And where bills against a county and in favor of a particular person, are found on file in the county clerk's office, which have been allowed and orders drawn therefor, and delivered to such person, who has obtained payment thereof, the presumption is, that he filed such bills, or caused them to be filed, and had knowledge of their contents.

COMPENSATION OF PUBLIC OFFICERS.—The power of the legislature over the subject of compensation for public officers, in the absence of constitutional restrictions, is unlimited. It may provide what mode or measure it will, and in making such provision, is controlled by no principle of uniformity or equality.

APPEAL from Multnomah County.

*W. S. Beebe,* for appellant.

*J. C. Moreland,* for respondent.

By the Court, WATSON, C. J.:

This action was brought by the respondent, the city of Portland, upon the official bond given by the appellant, L. Besser, as chief of police, with his co-appellants, as sureties, to recover the sum of nine hundred and thirty-seven dollars and twelve cents, alleged to have been collected by him, in his official character, for the respondent, and not paid over or accounted for as his said bond obligated him to do. After the issues had been made up, the cause was referred, in accordance with a written stipulation of the parties, to Hon. James K. Kelly, to take and report the testimony, together with his findings of fact and conclusions of law. The referee reported a balance due the respondent of two hundred and thirty-five dollars and forty-two cents, and recommended judgment for that amount. Appellants thereupon filed a motion to set the report aside, which was overruled, and judgment entered in accordance with the recommendation of the referee. From this judgment they have brought this appeal, assigning several errors in respect to such ruling.

The admission of the bond sued on in evidence, at the trial before the referee, against the objection interposed by the appellants, presents the first question to be disposed of here. They claim, through their counsel, that the delivery and acceptance of the bond were in issue under the pleadings, and that there was no evidence on either of these points introduced before the referee. Besser's appointment as chief of police, on July 3, 1877; his duly qualifying therefor; the making of the bond in question, and his con-

tinuance in such office until October 27, 1879, were either expressly or impliedly admitted by the pleadings. The bond, which was produced at the trial by the city auditor, the lawful custodian of official bonds executed in favor of the respondent, was identified by him, as the bond filed in his office on July 5, 1877, while he was a deputy under his predecessor in office; and he also testified to the genuineness of Besser's signature thereto. There was also an endorsement on the bond as follows:

"Approved by the board of police commissioners this 3d day of July, 1877.

"M. S. Burrill,

"William Connell,

"R. R. Riley."

Were these facts sufficient evidence of the delivery and acceptance of the bond to justify its reception, at the trial by the referee? Sec. 174 of the charter of the city of Portland, in force then, as at present, provides that the chief of police, before entering upon the duties of his office, "shall file a bond," etc. We have not been able to find any provision in the charter declaring, in express terms, where or with whom such bond should be filed. But the intention of the legislature which enacted the city charter, that it should be filed with some officer of the corporation, is apparent; and we have no doubt, in view of the general nature of the duties appertaining to the office of city auditor, both under general usage and the specific provisions of the city charter, that the legislature intended that such bonds should be filed in that office.

Sec. 63 of the charter declares, "That the auditor is the accounting and clerical officer of the city;" and by sec. 25 the official oaths of all elected officers are required to be taken before, and filed with the auditor. But if there could

be any doubt as to the city auditor being the proper officer to file said bond with, or as to such filing, if properly made, being considered a delivery under the statute (and we have none on either point) still the fact is admitted and proven beyond all controversy, that appellants made the bond; that it came into the actual possession and custody of an officer of the corporation, and was filed by him in his office, as a record of such corporation at the commencement, and so remained until the end of Besser's official term; and that he was permitted to enter upon the discharge of the duties of his office, and to continue to exercise its functions and receive its emoluments, during the whole period embraced in such term, without filing any other bond, and without any objection or opposition from the corporation or any of its officers, all taken together, in the absence of any explanation from the appellants, not only made a *prima facie* case for the admission of the bond by the referee in evidence but a conclusive one, we think, both as to the delivery of the bond by the appellants and its acceptance by the respondent.

The charter does not provide how such bonds may be delivered, unless it be by filing, nor how, nor by whom they may be accepted. In this condition of things, a delivery and acceptance might either be proven by parol evidence, or inferred from the conduct of the parties, as similar facts are established between private individuals. The charter not requiring any formalities in such transactions, it would be absurd to say that their validity in any way depended upon the observance of any. Where no forms are prescribed for the exercise of corporate powers of this nature, any act or course of conduct, on the part of the corporation, which justifies a legitimate inference of the exercise of such powers, is suf-

ficient to bind both the corporation and the parties dealing with it. (*Springfield* v. *Harris*, 107 Mass., 532.)

The second exception which appellants rely upon here, is based upon the admission, at the trial by the referee, of copies of some 348 county orders of Multnomah county, attached together as one package, by ordinary brass fasteners, and having but one certificate of the county clerk of said county attached thereto, to authenticate all of said copies, as evidence for the respondent. Each of these orders, as appears from the certified copies, was drawn upon the treasurer of Multnomah county, and payable to L. Besser, or order, and except in some three instances, expressly shows on its face, that it was drawn for his services as chief of police; and, in the three excepted instances, for services in making arrests in criminal actions. Each is endorsed with the name "L. Besser," and bears upon its face the date of its redemption, over the signature of the county treasurer, as provided by sec. 6 of chap. 9 of Mis. Laws, showing that it has been paid out of the county treasury. The first of these orders are dated August 8, 1877, and the last November 6, 1879. The objections interposed by the appellants, to the reception of this evidence by the referee, were quite numerous. Those we deem important will be disposed of in the order in which they were presented, as shown by the transcript.

Their first ground of objection was that the copies of the county orders were not properly certified, because all the copies were authenticated by a single certificate of the county clerk, instead of each one being certified separately, as they insisted the statute of the state required. They cite *Newell* v. *Smith*, 38 Wis., 39, cited and approved in *Sherburne* v. *Rodman*, 51 Wis., 474, which certainly seems to sustain their position, on principle, although the facts in the two cases are quite different. The general doctrine

laid down in that case, is, without doubt, that under a provision like that contained in sec. 738 of our civil code, each copy must be certified separately, to entitle it to be used as evidence. To this doctrine we cannot yield our assent. It has, we believe, never been the practice in this state for the custodian of such records to certify to each copy separately, where transcripts of several records, of the same class, are applied for at the same time, by a party for use as evidence in the same cause; and yet, we are unaware of a single instance in which the evils so forcibly depicted by the learned judge who delivered the opinion in the Wisconsin case, above cited, as the inevitable consequences of such a practice, have resulted from it. On the other hand, the adoption of the rule laid down in the case in 38 Wis., *supra*, would add most materially to the inconvenience and expense of procuring such evidence, without, as we think, promising any corresponding benefit. The case at bar, most forcibly illustrates the hardship which the adoption of such a practice must inevitably produce in many cases. Nor, in our judgment, does the statutory provision under examination require such a construction. It provides that "Whenever a copy of a writing is certified to be used, in evidence," etc. Now it seems to us that a copy may just as properly be said to be "certified," when attached to a certificate referring to it, in connection with other copies also attached and referred to in the same manner, as though it alone were attached, and solely referred to, in the certificate. And if a copy can be thus "certified" in connection with other copies, under the statute, it is admissible in evidence. Such is our view, at least, and the rule we feel compelled to lay down in this state.

The appellants also objected to the admission of these copies, on the ground that no evidence had been offered to

show that the orders had ever been delivered to Besser; or that he had ever endorsed them; or received any of the money paid upon them by the county treasurer of Multnomah county.   There is no controversy as to their having been drawn in his favor, payable to him, or order; that they were issued; endorsed with his name; and ultimately paid off and canceled by the county treasurer.   In the utter absence of all evidence to the contrary, as was the case in this instance, the objections last mentioned are fully answered by the legal presumptions arising upon the foregoing state of facts.   It must be presumed that the county clerk did his duty in issuing the orders to the person entitled to them; that Besser, being the person thus entitled, received and endorsed them in the ordinary course of business; and that either he or his endorsee received the amounts due upon them from the county treasurer, as the party entitled to such payments.   (Civil Code, sec. 766, subdivisions 9, 13, 15, 19 and 20.

The objections of appellants to the admission of the exhibits "K," "N," "O" and "P" are met in the same manner. They purport to be certified copies of bills, filed in the clerk's office in said county, at different times during Besser's term of office as chief of police.   These bills, judging from the certified copies, were all in the name of the chief of police, and in his favor, and were claims for services rendered by such chief of police, in criminal actions prosecuted by the state and were allowed by the county court of Multnomah county; and the orders therefor form a portion of the number in litigation, and were received by Besser. Evidently these bills were filed in the interest of Besser, and, in the ordinary course of business, must have been filed by him, or by some one who had authority from him to do so; and he must have had knowledge of their con-

tents.   At least such was the presumption of law, and it justified their admission as evidence by the referee.   (Subd. 20, sec. 766, Civil Code.)

We are unable to coincide with counsel for appellants in the proposition advanced by them, that if Besser acted as a constable, in performing the services for which he received the county orders, and not as chief of police, then he would be entitled to retain all the fees thus collected by him for such services, upon the ground of the provision in the city charter requiring him to pay such fees over to the city treasurer being unconstitutional.   The prohibition, in subd. 1, sec. 23 of art. 4 of the state constitution, applies only to local or special laws affecting the *"jurisdiction or duties,"* and not to those which may affect the compensation of "justices of the peace and constables."   We conceive that the compensation of all public officers, whether provided for in the form of fees or salaries, is subject to legislative control—except in instances where the power has been withheld by the fundamental law—and that insufficiency or inequality in the legislative provision for such compensation, is no ground for holding it invalid.   The officer, at least, has no legal ground for complaint.   The law must certainly be regarded as settled upon this point.   We have no disposition to discuss the question of the power of the legislature, where there is no constitutional restraint, to provide different modes and measures of compensation for public officers of the same class, in different localities; or having different claims for compensation—of which the legislature is to judge.   Besser was plainly required to pay the fees collected by him while he held the office of chief of police, to the city treasurer, by sec. 173 of the city charter, and for any balance so collected and not paid over this action would lie.

We have carefully examined the testimony to ascertain whether it sustained the finding of the referee as to the amount due, and are satisfied that his conclusions, in that respect, were entirely correct, and that the court below was fully justified in confirming the report, and rendering judgment therein.

The judgment is affirmed with costs to the respondent.