Argued December 2, decided December 29, 1908.

## STATE ex rel. *v.* DUNBAR.

[98 Pac. 878.]

STATES—COLLECTION OF ILLEGAL FEES—RECOVERY BY STATE.

1. Though Article XIII, Constitution of Oregon, provides that the Secretary of State shall receive an annual salary of $1,500, and shall receive no fees or perquisites whatever for the performance of any duties, repeals other acts authorizing the Secretary of State to collect fees for specified services, there being no statute requiring the Secretary to collect fees under such acts for the State's benefit, the State could not recover for its benefit fees so unlawfully collected.

OFFICERS—FEES—STATUTES.

2. Though fees allowed by law to an officer as compensation for services rendered are the officer's property, the legislature may compensate the officer by a salary and require him to collect the fees for the State's benefit.

OFFICERS—FEES—COLLECTION.

3. Where fees cannot be exacted by an officer for the purposes prescribed in the statute authorizing them, they cannot be exacted at all, and, if collected without authority, can be recovered by the person from whom they are exacted unless he is otherwise barred.

STATES—SECRETARY OF STATE—COMPENSATION—"SALARY."

4. Section 2390, B. & C. Comp., provides that the Secretary of State may employ clerks to aid in the performance of his duties, provided that the expenditure of moneys for clerk hire shall not exceed the appropriation of the legislature therefor, and that such clerks shall be paid out of the state treasury. Article XIII, Constitution of Oregon, fixes the salary of the Secretary of State at $1,500, and provides that he shall receive no fees or perquisites. *Held* that, since a "salary" is the personal compensation provided to be paid to an officer for his own personal services only, Section 2390, providing for an allowance to the Secretary of State for clerk hire, is not in violation of the constitutional provision.

From Marion: WILLIAM· GALLOWAY, Judge.

Statement by MR. JUSTICE EAKIN.

This is a suit originally commenced by J. K. Sears, a taxpayer, on behalf of the State, alleging that between January 14, 1899, and January 14, 1907, defendant, as Secretary of State, had received for the use and benefit of the State a large amount of money as fees for filing various papers, issuing commissions and licenses, recording documents, and copying public records, which money he had converted to his own use, and asks that an accounting be taken of the sums of money so received and for a decree requiring defendant to pay such sums to the State.

A demurrer to the complaint was sustained by the court, for the reason that Sears has not capacity to maintain the suit, and thereupon by amended complaint the State, at the relation of J. H. McNary, District Attorney for the Third Judicial District, was substituted as plaintiff therein. The answer of the defendant admits that he was Secretary of State as alleged, and that the relator, J. H. McNary, is district attorney for the Third Judicial District, as alleged, but denies all other allegations of the complaint.

Upon the trial the lower court found that defendant, as such Secretary of State, received the following sums:

For filing articles of incorporation............$    9,144.50
For issuing notarial commissions ...............   17,186.00
For recording trade-marks ......................    1,285.00
For copying laws and journals ..................   11,684.75
For issuing appointments of commissioners
  of deeds .....................................      148.00
For issuing other commissions ..................      814.00
For issuing agents' certificates to fire insur-
  ance companies ...............................   35,660.00
For isuing licenses to life insurance agents....    3,759.00
For issuing annual licenses to life insurance
  companies ....................................   21,488.16
For issuing requisitions and warrants of
  arrest .......................................      912.00
For registering title in insurance matters......      380.00
For issuing powers of attorney .................      970.00
For issuing certificates of authority to insur-
  ance companies ...............................      105.00
For filing statements of mutual fire insurance
  associations .................................      390.00

    Total  ...................................$103,926.41

Judgment was rendered for the above total in favor of the State, from which the defendant appeals.

                    REVERSED: SUIT DISMISSED.

For appellant there was a brief with oral arguments by *Mr. George C. Fulton* and *Mr. George G. Bingham.*

For the State there was a brief with oral arguments by *Mr. Leonard H. McMahan* and *Mr. John H. McNary,* District Attorney.

MR. JUSTICE EAKIN delivered the opinion of the court.

At the trial the defendant, by motion and demurrer, questioned the power of the court to permit by an amended complaint a substitution of the State as plaintiff in place of Sears, and also the power of a district attorney of his own motion to institute a proceeding on behalf of

the State to recover a debt due to it. . The trial court denied the motion and overruled the demurrer, and the defendant presses these contentions here; but we find it unnecessary to consider them, as the case is disposed of in his favor on the merits.

1. The foundation of plaintiff's right of recovery, as disclosed by the complaint, is that these sums of money were collected by the Secretary of State for the use and benefit of the State; the contention of plaintiff being that the constitution prescribes a salary for the Secretary of State and fixes that as his whole compensation, and that therefore the statute which allows to him certain fees and perquisites for work done is unconstitutional and void. Article XIII of the Constitution of Oregon provides, among other things, that:

" * * The Secretary of State shall receive an annual salary of fifteen hundred dollars * * (and) shall receive no fees or perquisites whatever for the performance of any duties. * * "

It is conceded that the fees received for filing articles of incorporation, issuing commissions to notaries, appointments of commissioners of deeds, miscellaneous commissions, and requisitions and warrants of arrest, were authorized by, and all collected under, Section 2923, B. & C. Comp., which is section 11 of an act of the legislative assembly, entitled "An act to prescribe the fees of certain officers and persons," passed October 24, 1864 (see Deady's Gen. Laws 1845-64, p. 732, c. 18), section 1 of which provides:

"The following fees shall be allowed to the officers and persons hereinafter named for the services herein specified."

Section 11 (Section 2923, B. & C. Comp.) provides:

"The fees of the Secretary of State shall be as follows: For certifying and affixing the seal of the State to any document or paper, two dollars; for making copies of any record or file, each folio, twenty-five cents; for filing articles of incorporation, two dollars and a half; for

recording any paper or document by law required to be recorded by him, for each folio, twenty-five cents."

Also, the fees received by him as insurance commissioner were exacted under a legislative act entitled, "An act to license and regulate insurance business in the State of Oregon," adopted February 25, 1887 (Laws 1887, p. 118), which, with amendments and additions thereto, constitute Sections 3706-3756, inclusive, B. & C. Comp. Section 1 of the act provides that:

"The Secretary of State shall be *ex officio* insurance commissioner of this State, and shall receive for his services as such commissioner the compensation hereinafter provided therefor."

The fees received for filing trade-marks were exacted under Section 4615, B. & C. Comp., which provides:

"A fee of two dollars and a half shall be paid to the Secretary of State by the owner of said trade-mark as pay for recording."

Assuming, without deciding, that the compensation provided for in these statutes is fees and perquisites and within the inhibition of the constitution, then the legislative acts authorizing them are clearly void, to that extent, and cannot be construed as authorizing the collection of them for the use and benefit of the State. No such intention on the part of the legislature is apparent. The right to exact such fees for the benefit of the State, or its title to the money so collected, must be established by legislative authority. If the fees cannot be exacted for the purpose prescribed in the statute, then they cannot be exacted at all, and, if collected without authority, may be recovered by the person from whom exacted, if he is not otherwise barred. Mechem's Pub. Officers, § 884, and cases cited.

2. In cases in which the manner of compensating officers has been changed from fees to a salary, it has been held that the collection for the use and benefit of the State under legislative authority of the fees thereto-

fore provided as compensation to the officer is not objectionable as being a special tax, but that it is competent for the legislature, if it sees proper, to exact from persons especially benefited by the performance of an official service a reasonable compensation therefor, to be paid into the public treasury, to reimburse the public for the expense incurred in providing for and maintaining such office. *Conner* v. *Mayor,* 2 Sandf. (N. Y.), 355; *State ex rel. Attorney-General* v. *The Judges,* 21 Ohio St. 1. Both of these cases recognize that fees allowed by law to an officer as compensation for services rendered are the property of the officer, but that the legislature may compensate the officer by a salary and require him to collect the fees for the use and benefit of the public. To the same effect is 23 Am. & Eng. Enc. Law (2 ed.), 387, and cases cited. But the State's right to such fees depends upon some legislative provision exacting the same as compensation to the State. This is the provision of the act of our legislature placing county officers upon salaries (Laws 1893, p. 163), and the act fixing the salary of State officers (Laws 1905, p. 133) ; but the unauthorized exaction of fees by an officer cannot operate to give the State or the county title to the money so received. This was expressly decided by this court in *Howard* v. *Clatsop County,* 41 Or. 149 (68 Pac. 425), construing Section 2927, B. & C. Comp., which was enacted by the legislative assembly in 1899, and provides that the district attorneys of the several judicial districts shall receive salaries as full compensation for their services. Section 2928, B. & C. Comp., provides that they shall receive no other fees or compensation of any kind.

3. By Section 1098, B. & C. Comp., enacted in 1878, it is made the duty of the county clerk to collect from the plaintiff in every divorce suit the sum of $10, which sum shall be paid to the district attorney as his fee in such suit. In *Howard* v. *Clatsop County,* 41 Or. 149 (68 Pac. 425), which is an action to recover from the county a $10 district attorney fee exacted in a divorce suit and

paid over to the county, the court, in construing sections 2927 and 2928, held that they operate to repeal section 1098 so far as it authorizes the collection of $10 as a district attorney fee in divorce cases. Mr. Justice WOLVERTON says: "The $10 fee required to be collected from a private party, under Section 1074, Hill's Ann. Laws (Section 1098, B. & C. Comp.), being one to which the district attorney was entitled, as a perquisite, for a duty performed by him, the act of 1899, putting him upon a salary, and expressly denying to him any further salary, etc., must be held 'to supersede, and thereby to repeal, Section 1074, Hill's Ann. Laws (Section 1098, B. & C. Comp.) as to such fee in judicial districts other than the Fourth, as the two provisions are utterly inconsistent, one with the other, and both cannot stand." And it was held that upon the face of the complaint plaintiff was entitled to recover such fee. The act of 1898 (Laws 1898, p. 8, § 3), which fixes a salary for the district attorney of the Fourth Judicial District, and which applied only to Multnomah County, provides, by section 8 thereof, which is Section 3030, B. & C. Comp., that the fees now established by law shall continue to be the established fees and shall be collected for the use of Multnomah County. In *State ex rel.* v. *Moore,* 37 Or. 536 (62 Pac. 26), it is held, in effect, that the right to the $10 district attorney fee in divorce cases in Multnomah County by virtue of the above provisions inured to the benefit of the county. The effect of these two decisions is that the clerk had no authority to exact the fee for the benefit of the county unless it had been expressly authorized, and, when wrongfully collected, the county acquired no right or title to it; but that it was the property of the person from whom it had been exacted. And this principle applies equally to the statute authorizing the exaction of fees by the Secretary of State. If the fees are illegally exacted, they are the property of the person from whom collected, and the State has no right thereto.

4. The only other item of fees sued for, relates to the compensation allowed to the Secretary of State for copying laws and resolutions for the use of the State Printer. The legislature at each session, by resolution, directed the Secretary of State to furnish to the State Printer within 30 days after its adjournment true and correct copies of the laws and resolutions adopted at that session, and that the compensation for making such transcripts should be as prescribed by law for like services in other cases. There is nothing in this record indicating that the amounts allowed by the resolutions were not expended in the preparation of the laws and resolutions as required. Section 2390, B. & C. Comp., provides:

"The Secretary of State shall be empowered to employ and appoint clerks to aid in the performance of the duties of his office: Provided, that the expenditure of moneys for the pay of such clerks shall not exceed the appropriation of the legislative assembly therefor, and that such clerks shall be paid out of the state treasury as other officers are paid."

The allowance provided by the resolution above referred to is not as personal compensation to the Secretary of State for personal services, to be rendered by him, but is to pay the expense of having such records transcribed. A "salary" is personal compensation provided to be paid to the officer for his own services, and does not prevent an allowance for clerk hire. *People* v. *Adams,* 65 Ill. App. 283; *Briscoe* v. *Clark County,* 95 Ill. 309. A similar provision was made by the last legislature to meet the expense of like work by the present Secretary of State, who is serving under a salary law which took effect January 1, 1907.

We conclude that the State has no right or title to the fees and perquisites exacted by the defendant under the statutes herein referred to, nor is the defendant accountable to the State therefor in this suit.

Therefore the decree is reversed, and the suit dismissed.

REVERSED: SUIT DISMISSED.